Easterbrook *v.* Erie Railway Company.

[MONROE GENERAL TERM, September 4, 1865. *Johnson, J. C. Smith* and *E. D. Smith,* Justices.]

---

EASTERBROOK *vs.* THE ERIE RAILWAY COMPANY.

In an action to recover damages for injuries done to the plaintiff's premises by water, in consequence of the diversion of a stream from its channel by the defendants, in constructing a culvert, the legal rule of damages has no reference to the cost of removing a bar of gravel carried there by the flood. The measure of damages in that class of cases is the depreciation in the value of the plaintiff's premises occasioned by the injury resulting from the defendants' acts.

In a case where the deposit is comparatively extensive, and the cost of removing it would probably equal, if not greatly exceed, the value of the soil covered by it, the rule contemplates that the material deposited by the flood is to remain upon the land; and one of the items of damage is the depreciation in the value of the land in consequence of its remaining.

The owner of the land is therefore under no obligation to remove the gravel so deposited thereon, by reason of his having received compensation for his

Easterbrook *v.* Erie Railway Company.

damages, from the wrongdoer; nor does he incur any peril, in a legal sense, by suffering it to remain.

Hence his neglect to remove such gravel bar will not preclude an action by him for·damages done by a subsequent flood, in consequence of the improper and unskillful location and construction of the culvert, by the defendants; although such gravel bar may have had some effect in deflecting the course of the flood. The case will be the same, in that respect, as if the flood had been thus diverted by the natural formation of the surface of the plaintiff's land, or as if the bar had been deposited there before the culvert was made.

APPEAL from a judgment rendered at the Steuben circuit in January, 1865, on the verdict of a jury. The plaintiff, in August, 1859, became seised in fee of a farm situate in Corning, Steuben county, over and across which ran a water course, which occasionally, in times of flood in the Chemung river, overflowed its banks, passed in a northerly direction over and across the plaintiff's land, and on to and across the adjoining lands of a Mr. Noyes. Before the plaintiff had acquired title to this farm the defendants had acquired the right to construct their roadway over and across the same; in constructing the road, for the purpose of allowing the water to pass in its accustomed channel over and across the plaintiff's farm, the defendants constructed a culvert which the evidence on the part of the plaintiff tended to prove was not so located or constructed as to allow the water a free passage over the plaintiff's farm. In 1861 there was a flood in the Chemung river, when a portion of the plaintiff's premises was injured by being washed away and gullied out immediately north of the culvert. A gravel bar was then thrown up and remained at the time of a subsequent flood in 1864. The evidence tended.to prove that the gravel bank thus thrown up aided, in the flood of 1864, in turning the current of the water more to the west as it passed through the culvert, and that such was its natural influence and effect, insomuch that the water of the flood of 1864 entered the plaintiff's hop yard at a point considerably above where water had ever before flowed, and thus covered the

ground there to a much greater extent than was ever before known. The plaintiff claimed that the injuries sustained by him by the flood of 1861, in throwing up the gravel bar, &c. immediately north of the culvert, was caused by the improper location and construction of the culvert, and brought his action to recover his damages therefor, whereupon the plaintiff and defendants agreed upon the damages alleged to have been thus sustained by the plaintiff, and the defendants paid him therefor, with costs of suit, and thus settled that controversy.

This action was brought to recover for flooding the plaintiff's hop yard by the flood of May, 1864, occasioned, as the evidence tended to prove, by the improper and unskillful location of the culvert and the gravel bank thrown up in 1861. The defendants' counsel insisted that if the current in 1864, after passing through the culvert had been thrown farther west by means of the gravel bar thrown up in 1861, and thus caused to run upon the plaintiff's hop yard where it had never ran before, the plaintiff could not recover for the injury thus sustained by the change in the current. The court instructed the jury that the question was whether the culvert had been unskillfully constructed and the injury caused by that means; and if that was the substantial cause the plaintiff's right to recover would not be affected even though the course of the water was affected to some extent by the gravel bar thrown up by the same cause previously. To this part of the charge the defendants' counsel excepted, and requested the court to charge the jury that if the flood of 1861 threw up a ridge or bar so as to change the course of the water and cause it to flow upon the plaintiff's hop yard, the plaintiff could not recover for the injury occasioned by the bar, for the reason that the defendants had settled with the plaintiff and paid for all damages done by the flood of 1861, including the throwing up of the bar. The judge refused so to charge or charge dif-

ferently from what had been already charged on the subject, and the defendants' counsel excepted. The defendants' counsel then requested the court to charge, that the defendants were not in this action responsible for the consequences of the bar thrown up as it was in 1861. The court refused thus to charge, and the defendants' counsel excepted. The jury found a verdict for the plaintiff for $1494.79, for which sum and costs the plaintiff recovered judgment.

*H. Gray,* for the appellants.

*Bradley & Kendall,* for the respondent.

*By the Court,* JAMES C. SMITH, J. The exceptions taken by the defendants to the charge of the judge, and to his refusals to charge as requested, proceed upon the assumption that the plaintiff is chargeable with negligence in not having removed the bar of gravel which was thrown up on his premises by the flood of 1861. Upon no other hypothesis can it be insisted that the judge erred in charging the jury that if the unskillful location and construction of the culvert was the substantial cause of the injury, the plaintiff's right to recover would not be affected, even though the course of the water was influenced to some extent by the gravel bar thrown up by the same cause previously; or that he erred in refusing to charge that the defendants are not responsible in this action, for the consequences of the bar. Indeed the defendants' counsel now claims as the basis of his argument that as his clients had compensated the plaintiff for causing the bar to be thus thrown up on the plaintiff's land, it was the business of the latter to *remove* the bar, if its removal was necessary, and that he allowed it to remain at his own peril.

But that conclusion does not follow. The compensation referred to, was for the damages which the plaintiff

sustained by the flood of 1861, and for aught that appears, it covered such damages only as he would have been entitled to recover in the action which he had theretofore commenced, and which was settled by the payment of such compensation. The legal rule of damages in such action had no reference to the cost of removing the bar. The measure of damages in that class of cases is the depreciation in the value of the plaintiff's premises occasioned by the injury resulting from the defendants' acts. (24 *Barb.* 273.) In a case like that which was settled by the parties, where the deposit is comparatively extensive, and the cost of removing it would probably equal if not greatly exceed the value of the soil covered by it, the rule contemplates that the material deposited by the flood is to remain upon the plaintiff's land, and one of the items of damage is the depreciation in the value of the land in consequence of its remaining. This is a far more favorable rule for the defendants in such cases than one based upon the cost of removal.

The plaintiff was therefore under no obligation to remove the gravel, by reason of his having received such compensation, nor did he incur any peril, in a legal sense, by suffering it to remain. If, as the jury are presumed to have found, the flood of water upon the plaintiff's premises in 1864, was caused substantially by the improper and unskillful location and construction of the culvert, the effect of the gravel bar in deflecting somewhat the course of the flood, has no legitimate bearing upon the question of damages. The case is the same, in that respect, as if the flood had been thus diverted by the natural formation of the surface of the plaintiff's land, or as if the bar had been deposited there before the culvert was made.

If the defendants' argument were sound, it would have the effect, not merely to lessen the plaintiff's recovery, but to defeat it altogether, since an action for damages on the ground of the defendants' negligence cannot be sustained

if negligence on the part of the plaintiff, however slight, co-operated with the defendants' misconduct to produce the injury.

I think the charge and rulings excepted to were in all respects correct, and that the judgment should be affirmed.

Judgment affirmed.

