CHARLES C. LA ROSE, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 29916.)

Court of Claims, November 3, 1950.

**318**

*John Ross* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Douglas S. Rider* of counsel), for defendant.

RYAN, J. Claimant asserts a claim '' for trespass, nuisance, interference with the use of claimant's land and permanent damages as a result of the State's changing drainage of the area in vicinity of premises owned by claimant.'' He also alleges that on or about October 10, 1947, the State '' wrongfully entered plaintiff's land and constructed a ditch thereon * * * to claimant's great and permanent damage '' and further that the State '' erected a culvert or culverts under the roads adjoining claimant's said premises and maintain and have since maintained said culvert or culverts in so wrongful and improper a manner that by reason thereof * * * large quantities of water ran from adjoining lands in unusual and unnatural quantities onto claimant's lands whereby (they) * * * were and continue to be inundated, rendered marshy and unfit for any use, * * * * ''. Further the pleading sets forth a description

by metes and bounds of the premises "appropriated or affected". In his prayer for relief, claimant demands damages of $2,500 as "value of land appropriated" together with interest thereon "from date of acquisition".

Thus the complaint pleads negligence, trespass and appropriation by the State. These are inconsistent. Upon the trial, in reply to inquiry by the court, claimant's counsel stated that he elected to proceed on "a theory of continuing trespass".

Claimant's land is situated in the town of Bethlehem, Albany County, on the west side of the highway near the junction of Route 9W and the Jericho Road. It may fairly be found from the evidence adduced at the trial that in October, 1947, the maintenance forces of the highway division of the State Department of Public Works raised the grade of the highway; lengthened two existing culverts, one under Jericho Road and one under 9W and constructed a basin to connect them; eliminated a twelve-inch pipe which previously had carried water down the westerly ditch of 9W into a triangular area formed by 9W, Jericho Road and a crossover road between them; and opened a ditch to take the water from the west side of 9W, confine it to the southerly approach to Jericho Road, across Jericho Road to the westerly side and then northerly along Jericho Road to the point where the first-mentioned culvert came out at the apex of the triangle. It may further be found that the State employees entered upon claimant's lands and opened up an existing ditch thereon for a length of fifty or sixty feet. Also, it may be found that the State employees, on the complaint of one Myers, the owner of the land on the easterly side of Route 9W, put a grader on his land and worked it back and forth and "attempted to make a basin out of it * * * attempted to make all the water flow to this culvert".

There is little, if any dispute, about the foregoing facts. There is sharp dispute on two points. First, the Attorney-General takes the position that the admitted entry upon claimant's lands was rightful and authorized by section 45 of the Highway Law. Claimant asserts that the entry was a trespass for which he should be compensated. It is true that section 45 of the Highway Law authorizes entry upon lands adjacent to a State highway by the Superintendent of Public Works, his representatives and employees, to open, maintain or construct an existing ditch or drain and for digging a new ditch or drain or section thereof for the free passage of water for the draining of such highways. But this statute contemplates that a property

owner shall be compensated for any damage caused by such entry and any work of construction, improvement or maintenance connected therewith.

Secondly, the Attorney-General asks for findings that no additional drainage was created by the State by the extension of the culvert at the apex of the triangle and that the elimination of the twelve-inch pipe at the base of the triangle and the other alterations made at that location did not cause more water to flow along claimant's land. We believe that these two requests are not fairly supported by the record. We believe that there is a fair preponderance of evidence to support a finding that since October, 1947, claimant's land is burdened with more water than formerly; that this is due to the alterations made by the State's employees in the highway and its drainage structures; that surface waters have been gathered by means of ditches constructed by the State and cast upon claimant's land. Upon the facts this case is to be distinguished from *Ortalano* v. *State of New York* (150 Misc. 144).

Upon the whole record it would seem that upon proper proof the claimant would be entitled to recover such damages as he sustained up to the time of the commencement of his action, within the limitations of the statute. (Court of Claims Act, § 10, subd. 3.) However, claimant has failed to present proper proof of his damages. The only proof of damages offered was the testimony of a licensed real estate broker to the effect that in October, 1947, claimant's lands were, in his opinion, as between a willing purchaser and a willing seller, worth $2,500 and that after the construction of the ditch in that month he would " say the value of that particular site for commercial purposes would be $500.00 ". This testimony would not be too satisfactory, even in an appropriation case. But giving it full faith and credit it must be said that it contemplates an erroneous measure of damages. (*Dietzel* v. *City of New York,* 218 N. Y. 270.) What claimant really complains of is not the single act of physical entry to open the ditch but the continual or repeated bringing of additional water onto his lands, initiated by the alterations in the highway ditches and culverts and facilitated in its spread by the enlargement of the ditch for fifty or sixty feet on his property. This is a condition which may be corrected. At least there is no proof in the record that it cannot be and no proof that it is permanent. The engineer's testimony that the land is low and swampy and that the water has no adequate outlet to the west does not support a finding that the condition

can not be corrected as requested by claimant's proposed finding numbered 6.

As there is no proper proof of damages before us this court is unable to make an award in this case and an order may be entered dismissing the claim for failure of proof. However, in the interest of justice, the order should provide that an application may be made by claimant within twenty days from the date of entry and service of the order of dismissal to reopen the trial for the purpose of offering proofs of the damages which accrued within ninety days of the filing by claimant of his notice of intention.